IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 2 9 2005

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

| | |
|---|---|
| TINA D. FOX, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5:04CV00072 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| JO ANNE B. BARNHART, | ) By: Hon. Glen E. Conrad |
| Commissioner of Social Security | ) United States District Judge |
| | ) |
| Defendant. | ) |

Plaintiff filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income ("SSI") benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1383 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

The court's review is limited to determining whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Tina D. Fox, was born on December 25, 1972. Ms. Fox was graduated from high school. She has been employed as a production worker/book packer, domestic housekeeper, dental assistant, secretary and poultry worker. Ms. Fox filed an application for

disability insurance benefits and protectively filed for SSI benefits on August 23, 2001. She alleged that she became disabled for all forms of substantial gainful employment on March 10, 2001, due to migraine headaches. Ms. Fox now maintains that she has remained disabled to the present time. The record reflects that Ms. Fox met the insured status requirements of the Act through the date of the Commissioner's decision. See generally, 42 U.S.C. §§ 414 and 423.

Ms. Fox's claim was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated April 25, 2003, the Law Judge also determined that Ms. Fox is not disabled. The Law Judge found that Ms. Fox suffers from pain due to migraine headaches and depression. The Law Judge then determined that, while Ms. Fox's migraine headaches and depression are severe within the meaning of the regulations, neither of these impairments meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. See 20 C.F.R. §§ 404.1520(c)-(d) and 416.920(c)-(d). Based on Ms. Fox's impairments, the Law Judge determined that she retains the residual functional capacity to perform a limited range of light work activity. Specifically, the Law Judge found that Ms. Fox:

> retains the residual functional capacity to lift and carry 20 pounds occasionally, 10 pounds frequently; stand and walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday.

(TR 22). Furthermore, in order to accommodate Ms. Fox's mental impairment, the Law Judge added that she has the additional limitations of:

> moderate difficulty in the areas of understanding, remembering, and carrying out short, simple instructions; making judgments on simple work-related decisions; interacting appropriately with the public and supervisor(s); responding appropriately to changes in a routine work setting; and marked difficulty in the areas of understanding, remembering, and carrying out detailed instructions and interacting appropriately with coworkers or

2

responding appropriately to work pressures in a usual work setting.
(TR 22).

Given her residual functional capacity, and after consideration of plaintiff's age, education, and past work experience, as well as the testimony of a vocational expert, the Law Judge determined that Ms. Fox is capable of working as an assembler, food preparation worker, typist or custodian. (TR 23-24). Therefore, the Law Judge ultimately concluded that Ms. Fox is not disabled, and that she is not entitled to benefits under either program. See 20 C.F.R. § 404.1520(f) and 416.920(f). Ms. Fox then filed a request for review with the Social Security Administration's Appeals Council. On June 17, 2004, the Appeals Council denied Ms. Fox's request for review and adopted the Law Judge's opinion as the final decision of the Commissioner. Having exhausted all available administrative remedies, Ms. Fox now appeals to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether the plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2) and § 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the

3

Commissioner's final decision is supported by substantial evidence. The Law Judge sufficiently considered plaintiff's alleged symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. Therefore, there is substantial evidence to support the Commissioner's finding that plaintiff is not disabled.

The record contains substantial evidence to support the Law Judge's determination of plaintiff's residual functional capacity. Ms. Fox reported to the emergency room at Rockingham Memorial Hospital for several acute migraine headaches in early 2001. (TR 149-57). Ms. Fox reported a long history of severe headaches. (TR 149, 153). Because her headache became continuous for a period of three weeks, Ms. Fox was referred to the Department of Neurology at the University of Virginia Health Sciences Center in March 2001. (TR 163). Ms. Fox received trigger point injections on March 22, 2001. (TR 160-62). The injections achieved only moderate success, therefore Dr. John Rowlingson prescribed a TENS unit to help decrease the pain. (TR 158).

A CT scan of Ms. Fox's head performed at Rockingham Memorial Hospital on March 9, 2001 disclosed no significant abnormalities. MRI procedures performed at Rockingham Memorial Hospital on April 18, 2001 and July 23, 2001 also indicated no abnormalities. (TR 170). In addition, an EEG performed on June 26, 2001 showed no abnormalities. (TR 165). However, Ms. Fox continued to experience painful migraine headaches. (TR 174, 191, 308). Dr. Jerome Hotchkiss, Ms. Fox's treating physician, in a note dated July 23, 2001, indicated that he had advised Ms. Fox to continue working light duty on a full time basis, but that Ms. Fox stated she felt totally disabled. (TR 306).

A Psychiatric Review Technique form completed on September 25, 2001 indicated that

4

Ms. Fox possessed no medically determinable impairments. (TR 177-90). In a Residual Physical Functional Capacity Assessment completed on September 25, 2001, the medical consultant noted Dr. Hotchkiss's opinion that Ms. Fox could work light duty on a full-time basis, and also concluded that her residual functional capacity was for light duty work. (TR 253-60). Specifically, the medical consultant concluded that Ms. Fox's symptoms were credible and that she could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk 6 hours in an 8 hour workday, and sit about 6 hours in an 8 hour workday. (TR 254-55).

A Functional Capacity Evaluation of Ms. Fox was performed on October 10 and 12, 2001. (TR 199-210). The report indicated that Ms. Fox had failed to give maximum effort throughout the testing. (TR 209). When Ms. Fox left the clinic after testing, the clinician also noticed that she was walking at a faster pace than she had maintained during the testing, that Ms. Fox drove herself away from the parking lot even though she had earlier remarked that a friend would be picking her up, and that Ms. Fox turned her head to look out of her car windows though she had not moved her head much during testing, claiming that doing so would make her dizzy. (TR 210). In any case, the report concluded that, although Ms. Fox did appear to suffer complications from headaches, some of her symptoms and responses during testing appeared to be amplified. (TR 210). The report also concluded that Ms. Fox could perform sedentary work, but that, because of Ms. Fox's submaximal efforts, her actual maximum abilities would have to be left to conjecture. (TR 207, 210).

Ms. Fox was then referred to Dr. Pierre Pavot from the Department of Neurology at the Medical College of Virginia. (TR 211). Dr. Pavot examined Ms. Fox on November 5, 2001 and noted that her headaches had taken on a "chronic daily headache pattern." (TR 211). Ms. Fox

reported that her medications had been helpful and had lessened the severity of her pain, though she continued to have daily headaches. (TR 213). Dr. Pavot also noted that Ms. Fox was depressed and that her medical findings suggested fibromyalgia. (TR 215). In January 2002, Ms. Fox visited Dr. Hotchkiss, indicating that her headache pain was partially controlled with medication but that the idea of working again gave her significant stress and anxiety. (TR 289). Ms. Fox continued to periodically require emergency treatment for migraine headache pain. (TR 231, 234, 236). A neurological examination on April 12, 2002, however, showed no objective findings. (TR 261-62). In a visit to Dr. Robert Audet at the Blue Ridge Pain Center on August 20, 2005, Ms. Fox reported increasing problems with her migraine headaches, and she received nerve block injections on that date. (TR 370). In May 2003, Ms. Fox was again evaluated at the University of Virginia's Department of Neurology for headache pain. (TR 474). Ms. Fox reported having a headache approximately 15 of 30 days in a month at the same level of pain. (TR 474). Ms. Fox noted that the headaches are worsened in terms of frequency and intensity when she misses her prophylactic medications. (TR 474).

Dr. Laury Goolsby, a clinical psychologist, completed a brief psychological screening of Ms. Fox on October 10, 2001. (TR 228-30). Dr. Goolsby opined that Ms. Fox's migraine headaches were the result of somatic reactions to stressors in her life. (TR 230). In January 2002, Dr. Goolsby evaluated Ms. Fox for possible psychological treatment of the pain associated with her headaches. (TR 226-27). Dr. Goolsby noted that Ms. Fox contradicted herself by first stating that her medications are managing her headaches and then stating that she is still having the same headaches. (TR 226). Dr. Goolsby also noted that some of her symptoms appeared to be inconsistent and unrelated. (TR 227). Ms. Fox did not return to Dr. Goolsby for further

6

psychological treatment. (TR 227).

A second Psychiatric Review Technique form was completed on February 28, 2002. (TR 239-52). The consulting psychologist reported possible depression that was not severe and was causing mild restrictions in the activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (TR 242, 249). The consulting psychologist also noted that Ms. Fox was not receiving any mental health treatment. (TR 251).

Ms. Fox then began psychological treatment at Valley Behavioral Medicine in Harrisonburg. In an undated report, Ms. Fox was evaluated at 50 on the Global Assessment of Functioning Scale.[1] (TR 367). Ms. Fox completed a health history form for the Center for Behavioral Health on June 4, 2002 and indicated that her ability to function in life was a 6 of 10 with 10 being the best ability. (TR 399). A clinician at the Center for Behavioral Health also indicated that her current level on the Global Assessment of Functioning Scale was 50. (TR 405).

Dr. Lightner, a psychiatrist at Valley Behavioral Medicine, completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) on November 6, 2002. (TR 432-34). Dr. Lightner indicated that Ms. Fox has poor ability to remember locations and work-like procedures; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; work with or near others without being distracted by them; perform at a consistent pace; interact

---

[1] The global assessment of functioning is used to report the clinician's judgment of the subject's overall level of functioning. A score of between 41 and 50 is indicative of serious symptoms or any serious impairment in social, occupational or school functioning. A score of between 51 and 60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition. Washington, DC, American Psychiatric Association, 1994. P. 44-47.

with the public; accept instructions from her supervisors; and get along with co-workers and peers. (TR 432-33). Dr. Lightner reported that Ms. Fox has a fair ability to understand and remember short, simple instructions; carry out short, simple instructions; sustain an ordinary routine; make simple work-related decisions; perform at a consistent pace; ask simple questions; and respond appropriately in the work setting. (TR 432-33). Dr. Lightner also indicated that Ms. Fox has good abilities in the areas of maintaining socially appropriate behavior, adhering to basic standards of neatness, and setting realistic goals or making plans independently of others. (TR 433-4). Dr. Lightner included no descriptive narrative along with the form.

Ms. Fox was referred to Dr. Joseph Cianciolo, a licensed clinical psychologist, for an independent psychological assessment on January 22, 2003. (TR 440-44). Dr. Cianciolo administered an MMPI 2 test, but noted that the results indicated that an invalid profile was obtained due to an elevated F. scale. (TR 441). Dr. Cianciolo diagnosed Ms. Fox with major depressive disorder, single episode, moderate and stated that her Global Assessment of Functioning score was 55. (TR 442). Dr. Cianciolo noted that, because of Ms. Fox's depressive illness, she would experience difficulty with detailed and complex tasks, though she would be able to complete simple and repetitive tasks. (TR 442). Dr. Cianciolo also opined that Ms. Fox's ability to maintain regular attendance in the workplace, perform work activities on a consistent basis, and complete a normal workday or work week without interruption would be moderately compromised. (TR 442).

At a hearing on November 18, 2002, Dr. Charles Cook, a medical expert present during the hearing, testified that Ms. Fox had normal neurologic exams on many occasions, but that he had seen patients who had normal objective testing and still experienced severe headaches with

8

no organic basis. (TR 504-05). Dr. Cook also made particular mention of testing in which Ms. Fox had made inconsistent efforts and had appeared to be melodramatic. (TR 502-03). Ms. Fox also testified at the hearing, stating that she was experiencing panic attacks along with migraine headaches, particularly when many people are present. (TR 494-95). At that hearing, the Law Judge decided to refer Ms. Fox to Dr. Cianciolo for the psychological assessment described previously. (TR 506). A second hearing took place on August 16, 2003. At that hearing, the Law Judge posed a hypothetical question to the vocational expert, Dr. Barry Hensley, including the limitations described in Dr. Cianciolo's report. (TR 516). These limitations are the same as those ultimately found by the Law Judge, as stated previously. (TR 22). Dr. Hensley indicated that, with those limitations, there were occupations that existed in sufficient numbers in the economy that such an individual could perform. (TR 516). In considering the limitations described in Dr. Lightner's earlier report, however, the vocational expert indicated that competitive work would be precluded. (TR 518).

The Law Judge found that Ms. Fox's allegations regarding her limitations were generally credible, but that they failed to rise to the level of disability. (TR 22). In making this determination, the Law Judge relied upon the opinions of Dr. Hotchkiss, Ms. Fox's treating physician, Dr. Cooke, the medical expert, and Dr. Cianciolo. (TR 22-23). In according little, if any, weight to Dr. Lightner's report, the Law Judge noted that the limitations he indicated are far more restrictive than those shown in the medical record as a whole. (TR 22-23). In addition, the court notes that although Ms. Fox testified that she does see Dr. Lightner, her twice weekly sessions are actually with a therapist, Marian Avison, rather than with Dr. Lightner himself. (TR 495).

In short, the record establishes that plaintiff retains the residual functional capacity to perform a significant number of jobs in the national economy. Ms. Fox has reported some improvement through medication, though she continues to suffer from periodic headaches. Ms. Fox has also reported inconsistent symptoms and sometimes contradicted her own statements. During testing, Ms. Fox failed to give her maximum effort and then exhibited greater functional abilities once she was outside the testing facility. Clinicians also noted that Ms. Fox appeared to be melodramatic and had amplified her symptoms and responses. The court must conclude that there is substantial evidence in support of the Law Judge's finding of residual functional capacity to perform a significant number of jobs in the national economy, including assembler, food preparation worker, typist or custodian.

Having found substantial evidence to support the Commissioner's determination that the plaintiff is not disabled, the court concludes that the Commissioner's final decision must be affirmed. In affirming the Commissioner's decision, the court does not suggest that the plaintiff is totally free of symptoms related to her pain due to migraine headaches and depression. However, there is substantial evidence to support the Law Judge's opinion that Ms. Fox can work as an assembler, food preparation worker, typist or custodian. It must be recognized that the inability to work without any subjective complaints does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). It appears to the court that the Administrative Law Judge gave full consideration to all the subjective factors in adjudicating Ms. Fox's claims for benefits. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of

the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

ENTER: This 29th day of April, 2005.

*[signature]*
United States District Judge

11